

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-16-2005

# 515 Assoc LLC v. Travelers Indemnity

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4332

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"515 Assoc LLC v. Travelers Indemnity" (2005). *2005 Decisions.* Paper 105.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/105

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 03-4332

———

515 ASSOCIATES LLC,
                                        Appellant

v.

TRAVELERS INDEMNITY CO. OF ILLINOIS
t/a
TRAVELERS PROPERTY CASUALTY GROUP

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 01-cv-02295)
District Judge: Honorable William H. Walls

———

Submitted Under Third Circuit LAR 34.1(a)
December 12, 2005

Before: SLOVITER, SMITH, and STAPLETON, Circuit Judges.

(Filed: December 16, 2005)

———

OPINION

———

SLOVITER, Circuit Judge.

515 Associates, LLC ("515 Associates") appeals from the order of the District Court granting summary judgment in favor of defendant Travelers Indemnity Company ("Travelers").[1]

## I.

Appellant 515 Associates, LLC, owns and operates an apartment complex in Newark, New Jersey, that is equipped with three Westinghouse elevators. The elevators were installed in 1962, and are covered by a boiler and machinery insurance policy issued by Travelers. The policy provides coverage for damage caused by an "accident" to an "object." App. at 105a. Under the policy, "accident" is defined as follows:

> "Accident" means a sudden and accidental breakdown of the "object" or part of the "object." At the time the breakdown occurs, it must become apparent by physical damage that requires repair or replacement of the "object" or part of the "object."
>
> None of the following is an "accident":
> a.     Depletion, deterioration, corrosion, erosion, or wear and tear, unless a sudden and accidental breakdown ensues;
> b.     The breakdown of any structure or foundation; or
> c.     The functioning of any safety or protective device.

App. at 117a.

The policy also contained a provision to resolve a dispute over damages by appraisal, which states, in pertinent part:

---

[1] The District Court had jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

2

If we and you disagree on the value of the property, the amount of "business income" or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction.

App. at 111a.

On January 27, 1999, 515 Associates reported a loss due to a "major elevator failure" having occurred on January 20, 1999. Less than a week before, on January 22, 1999, 515 Associates had issued a letter to residents of the building stating that "[d]uring the past week we have experienced a series of different failures with the building's elevators that have caused the entire system to shut down," and that an elevator consultant advised 515 Associates that they "could continue to operate under our present maintenance contract and repair the system each time a malfunction occurs . . . or . . . replace the system with a new state of the art system." Supp. App. at 1.

515 Associates retained William Newby ("Newby") of Newmont Elevator Analysts, Inc., to inspect the elevator system. Newby, the consultant for 515 Associates, shared with Travelers his opinion that the cause of the damage "appears to be electrical . . . but it is virtually impossible to determine the direct cause." App. at 25a. He further stated:

Heat, shorts and grounds within the system damaged approximately 30% of the controller and selector components. This condition, while most severe on controller #1, caused all three cars to fail initially. Only through an extraordinary effort by the elevator maintenance company, were they able to return Car #2 to automatic and Car #3 to manual operation.

3

Id. He referred to "fire damage to [the] elevators," App. at 25a, but 515 Associates

conceded thereafter that no fire had occurred. Instead, 515 Associates claimed that the

entire control system sustained electrical damage on January 14, 1999.

Travelers retained David LaPointe of Crawford Technical Services to investigate

the claim. LaPointe noted the opinion of his assistant that "the damage occurring on

January 14th, 1999 are [sic] repairable at minimal costs." App. at 28a. LaPointe's

inspection revealed that only a few wires were damaged and troubleshooting could repair

them as other wires had been repaired in the past. Id. He observed that the equipment

was "very old and is in need of replacement," and that it had "served out its useful life

and is breaking down due to its age." Id.

LaPointe further stated:

We are not suggesting that the incident of January 14th, 1999 is excluded by the
coverage afforded by the Travelers Property Casualty Corporation. We do suggest
that the cost to repair the resultant damages are well below the applicable policy
deductible and may, in fact, be repaired at no cost to the insured. We, therefore,
are making no offer for "settlement" of that loss.

Any action taken by the Travelers Property Casualty Corporation or [its]
representatives in investigating the cause of loss, or investigating and ascertaining
the amount of sound value, or the amount of loss and damage which occurred on
or about January 20th - 25th, 1999, shall not waive or invalidate any of the terms
or conditions of any policy or policies and shall not waive or invalidate any rights
whatever of either of the parties to the policy. No act of the company done by
way of investigation, defense or participation shall be construed as any admission
of coverage under said policy.

Id.

Travelers retained yet another consultant, Richard Ladroga ("Ladroga"), who

4

agreed with LaPointe's assessment. Ladroga reported that the "damage to the elevator control system equipment is primarily age related," and that there was "no evidence of severe damage caused by any one specific accident or failure that would render the system inoperable and beyond repair." Supp. App. at 41. His report further stated that the elevators were approximately 40 years old, and that the life expectancy for this type of elevator is approximately 25 years.

On December 27, 2000, 515 Associates filed suit against Travelers seeking damages for the costs of repairing and replacing the elevator equipment. An appraisal performed pursuant to the appraisal provision of the policy awarded $80,000. Travelers moved for summary judgment and 515 Associates cross-moved for summary judgment. The District Court determined that there was no genuine issue of material fact as to the existence of an "accident" under the policy. App. at 11a. The court stated:

> Importantly, Plaintiff has failed to provide evidence to prove that the failure was an 'accident' under the policy. Plaintiff does not refute Defendant's assertion that the failure was caused by the elevator's age or offer an alternative theory. Plaintiff's own expert, Mr. Newby, could say only that "it is virtually impossible to determine the direct cause" of the failure.

Id. Accordingly, the court granted summary judgment to Travelers and denied summary judgment to 515 Associates. We have plenary review and apply the same standard as did the District Court. Cantor v. Perelman, 414 F.3d 430, 435 n.2 (3d Cir. 2005).

## II.

On appeal, 515 Associates argues that Travelers has admitted liability under the

5

policy, relying on the statement made by Travelers' claim investigator to 515 Associates that "[w]e are not suggesting that the incident of January 14, 1999 is excluded by the coverage . . . . We do suggest that the cost to repair the resultant damages are [sic] well below the applicable policy deductible." 515 Associates argues that the statement constitutes an admission of liability under the policy. Appellant's Br. at 7; App. at 28a.

We see no basis upon which to accept 515 Associates' position that the statement is a binding admission of liability. First, nothing in the language admits liability. Stating that one does not suggest that an incident is excluded does not logically imply that one does suggest that the incident is included. At most, it can be read to mean simply that the basis for denial of benefits at that time was not exclusion but rather the amount of damages. The letter did not reach the issue of whether or not the incident would be covered if the amount of damage assessed were greater than the deductible.

Second, the letter included a paragraph directly following the quoted language explicitly stating that Travelers does not waive any defenses or admit any liability under the policy. Read together with the preceding paragraph, this disclaimer makes clear that there was no affirmative admission. 515 Associates contends that the paragraph retaining all rights under the policy was merely "boilerplate," apparently suggesting that therefore it can be disregarded. There is no evidence that it is "boilerplate," but even if it were so, it would not be ineffective.

Finally, a waiver requires a clear and unequivocal relinquishment of a right, which

the statement at issue did not nor is there any evidence that 515 Associates detrimentally relied upon Travelers' alleged waiver. There was no admission of liability.

**III.**

Turning to the issue whether the elevator break-down constituted an "accident" under the policy, we must apply New Jersey law, under which insurance contracts are interpreted by their plain meaning unless an ambiguity exists. Voorhees v. Preferred Mut. Ins. Co., 607 A.2d 1255, 1260 (N.J. 1992). There is no ambiguity here.

The policy in question covers an "accident," defined as a "sudden and accidental breakdown of the 'object' or part of the 'object.'" App. at 117a. Travelers agrees that the meaning of "sudden and accidental" is "unexpected and unintended" under New Jersey law, as 515 Associates contends, see Morton Intern., Inc. v. General Acc. Ins. Co. of America, 629 A.2d 831, 863 (N.J. 1993), and that the elevator is an "object" under the policy. However, Travelers contends that the breakdown in question falls outside the definition of "accident" because the policy states that an accident is not "[d]epletion, deterioration, corrosion, erosion, or wear and tear, unless a sudden and accidental breakdown ensues." Appellee's Br. at 15.

515 Associates argues that the District Court erred when it interpreted the phrase "unless a sudden and accidental breakdown ensues" that follows the exclusion of "[d]epletion, deterioration, corrosion, erosion, or wear and tear." 515 Associates interprets said phrase to mean that "[i]f something wears out, it should be replaced. But

7

if before replacement the Object breaks down, there is coverage." Appellant's Br. at 10.

It was the District Court's interpretation that the clause only means that the existence of a

deterioration does not bar a claim if an unrelated unexpected and unintended breakdown

occurs, and that a breakdown due to natural deterioration cannot be "unexpected" from

the insured's perspective. We agree.

There was uncontested evidence that the elevators were the subject of chronic

failures attributed to their age. Ladroga reported that Mr. John Sweeney, President of

Jersey Elevator Company, told him that "the history of trouble calls and service at this

facility has been extensive, especially over the past 12-to-18 months," that the control

system had experienced a "wide variety of problems," and that the condition of the

control system was a function of the advanced age of the components. Supp. App. at 40.

Ladroga specifically stated in his initial report:

> The site inspection revealed that other wiring had been repaired in
> the past, as evidenced by soldered, crimped, and taped connections
> (Photograph #01, Attachment A). This equipment is indeed very old
> and in need of replacement, but it is my opinion that it has served
> out its useful life and is breaking down due to age.

Appellee's Br. at 6.

The situation described by the above-quoted language is precisely that which is

covered by the exclusion language. 515 Associates did not produce any countervailing

evidence. It follows that the District Court's grant of summary judgment to Travelers

must be upheld. There is no genuine issue of material fact as to the cause of the

8

breakdown.  Travelers' experts, LaPointe and Ladroga, identified the old and deteriorating condition of the elevators as the cause of the breakdown, and stated that the elevators had long-outlasted their life expectancy.  515 Associates does not argue in its brief that there is another cause, and its own consultant, Newby, stated that it was "virtually impossible" to identify the direct cause.  Further, 515 Associates issued a letter to its tenants stating that a *series* of failures caused the elevators to cease functioning, which is consistent with the evaluation of Travelers' experts.  As there is no evidence supporting a conclusion other than a finding that the cause of the failure was due to the age and deterioration of the equipment and not to an "unexpected and unintended" breakdown, 515 Associates cannot make out a claim under the Travelers policy.

## IV.

Because there is no genuine issue of material fact, we will affirm the District Court's grant of summary judgment in favor of Travelers and denial of summary judgment to 515 Associates.